UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MACHELL L. POLLARD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | No. CV 14-7293-PLA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 18, 2014, seeking review of the Commissioner's denial of her application for Supplemental Security Income ("SSI") payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on October 3, 2014, and October 20, 2014.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 5, 2015, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on November 24, 1957. [Administrative Record ("AR") at 137.] She has past relevant work experience in balloon design. [AR at 31, 69.]

On August 2, 2012, plaintiff filed an application for SSI payments, alleging that she has been unable to work since January 1, 2008. [AR at 20, 137.] After her application was denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 20, 109-11.] A hearing was held on July 15, 2013, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 39-75.] A vocational expert ("VE") also testified. [AR at 68-73.] On September 18, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability since August 2, 2012, the date the application was filed. [AR at 20-32.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 16.] When the Appeals Council denied plaintiff's request for review on July 21, 2014 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.  THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires

the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 2, 2012, the application date. [AR at 23.] At step two, the ALJ concluded that plaintiff has the severe impairments of schizoaffective disorder, polysubstance dependence, alcoholism, and osteoarthritis. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 25.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform a reduced range of medium work as defined in 20 C.F.R. § 416.967(c),[2] with

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
(continued...)

4

1 additional limitations from her mental impairment, as follows:

> The claimant can lift and carry 50 pounds occasionally and 25 pounds frequently. She can stand and walk for 6 hours and sit for 6 hours in an 8 hour day, with normal breaks. She is restricted from performing detailed or complex tasks or instructions. She has moderate limitations dealing with supervisors, co-workers and the general public and moderate limitations in maintaining concentration and attention.[FN3] She has no other limitations.
>
> [FN3] In posing this [RFC] to the [VE], I explained that "moderate" means more than mild but less than severe. It is a limitation significant enough to be noticeable but "moderate" on general observation, as one understands the ordinary use of the term "moderate" so that such limitations would not preclude the function indicated.

[AR at 27.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a balloon designer (Dictionary of Occupational Titles ("DOT") No. 651.685-014), as generally and as actually performed.[3] [AR at 31, 69-71.] Accordingly, the ALJ determined that plaintiff was not disabled at any time since August 2, 2012, the date the application was filed. [Id.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) failed to properly account for the limitations found by examining consultative psychologist Avazeh Chehrazi, Ph.D., and non-

---

[2](...continued) carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

[3] DOT number 651.685-014 corresponds to the light-exertional occupation of "Design Printer, Balloon." The DOT describes this position as involving printing designs and lettering on balloons using a cylinder press or printing plate, and cleaning machine rollers, plates, and troughs when color changes are specified. DOT No. 651.685-014. It may require that the individual "inflate balloon on air nozzle, align and press one or more inked block dies against balloon, deflate balloon, and place balloon in box." Id. Plaintiff's testimony and explanation to the Agency of her past work in balloon design [see, e.g., AR at 90, 167], on the other hand, reflects that she was helping her sister's business by blowing up balloons with a helium tank or hand-held air tank, tying the balloons, and putting them into arrangements, such as an arch, bundle, or decoration for parties. [AR at 61 ("I blow balloons up with the tank"), 90, 168 (job involves making "designs of bal[l]oons").] That job did not involve tools or equipment, other than PVC poles [AR at 168] and the air tank. [AR at 61, 90.] Plaintiff's sister paid plaintiff $10 every time plaintiff helped with a party. [AR at 61-62, 63.]

examining psychologist Paul Klein, Psy.D., and "incorporated an inaccurate interpretation of the term 'moderately limited'" into both the RFC and in the hypotheticals to the VE; and (2) found that plaintiff could do her past relevant work in balloon design, which exceeds her mental limitation precluding detailed tasks. [Joint Stipulation ("JS") at 5.]

As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.    MEDICAL OPINIONS AND THE ALJ'S RFC DETERMINATION**

**1.    Legal Standard**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the

[treating or examining] doctors', are correct." Id.

### 2. Dr. Chehrazi and Dr. Klein

On December 3, 2012, Dr. Chehrazi examined plaintiff at the request of the State Agency. [AR at 311-16.] Dr. Chehrazi did not review any medical records. [AR at 312.] She conducted a complete psychological evaluation, and administered the Wechsler Adult Intelligence Scale - Fourth Edition, and the Wechsler Memory Scale - Fourth Edition. [AR at 311.] Dr. Chehrazi noted her diagnostic impressions of schizoaffective disorder and mild intellectual disability. [AR at 315.] As summarized by the ALJ, Dr. Chehrazi opined that plaintiff would have "moderate difficulty" in her abilities to (1) understand, remember, and carry out detailed and complex instructions due to her interfering psychotic processes; (2) make simplistic work-related decisions without special supervision; (3) comply with job rules such as safety and attendance; (4) maintain persistence and pace in a normal workplace setting; and (5) interact appropriately with supervisors, co-workers, and peers on a consistent basis "as her paranoia may interfere with her perception of reality." [AR at 30 (citing AR at 315-16).] Dr. Chehrazi also found that plaintiff would have "mild difficulty" responding to changes in a normal workplace setting. [Id. (citing AR at 315).] She found that plaintiff "would be able to understand, remember and carry out short, simplistic instructions with no difficulty." [Id. (citing AR at 315).] In assigning "significant weight" to this opinion, the ALJ specifically noted Dr. Chehrazi's opinions that plaintiff would be able to understand, remember, and carry out simple instructions without difficulty, and would have moderate difficulty carrying out detailed and complex instructions, "maintaining concentration, persistence, and pace in a work setting," and interacting appropriately with supervisors, co-workers, and peers. [Id.] The ALJ did not specifically reject any portion of Dr. Chehrazi's opinions.

On December 23, 2012, based on his review of the medical record, including Dr. Chehrazi's evaluation, the State Agency psychologist, Dr. Klein, assessed plaintiff's mental

/
/
/

7

functional limitations. [AR at 93, 96, 99-101.] With respect to the paragraph B criteria of the Listings,[4] Dr. Klein found that plaintiff was mildly limited in activities of daily living, and moderately limited in maintaining social functioning, and concentration, persistence, or pace. [AR at 95.] In his Mental Residual Functional Capacity Assessment, Dr. Klein noted that plaintiff was moderately limited in the following functional abilities: carry out detailed instructions; maintain concentration and attention for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; complete a normal workday or workweek without interruptions from psychologically-based symptoms; interact appropriately with the general public; get along with co-workers and peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. [AR at 99-100.] He found that plaintiff was not significantly limited in her ability to carry out very short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; and be aware of normal hazards and take appropriate precautions. [Id.] In the narrative portion of his mental residual functional capacity assessment,[5] Dr. Klein specifically noted that plaintiff is able to understand and remember at least simple 1-2 step tasks; sustain concentration, persistence, and pace for simple 1-2 step tasks; accept instructions from coworkers and interact superficially with coworkers and the public; and adapt to planned change in most routine work-like settings. [AR at 100.] In assigning "significant weight" to this opinion as well, the ALJ specifically noted Dr.

---

[4] "To satisfy the 'paragraph B' criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." [AR at 25-26.]

[5] As described in the form itself, the individual questions "help determine the individual's ability to perform sustained work activities," while "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes." [AR at 99.]

Klein's opinions that plaintiff was not significantly limited in carrying out short and simple instructions "but was moderately lim[it]ed in handling detailed instructions, maintaining attention and concentration for extended periods and was moderately limited in getting along with coworkers or peers and moderately limited in maintaining socially appropriate behavior." [AR at 30.] He did not specifically reject any portion of Dr. Klein's opinions.

The ALJ concluded that plaintiff "has the residual functional capacity for medium work with moderate limitations in her ability to handle detailed and complex tasks, moderate limitations on her ability to maintain concentration and attention and moderate limitations on her ability to deal appropriately with co-workers, supervisors and the general public." [Id.] His RFC determination ultimately *precluded* plaintiff from performing detailed or complex tasks or instructions, and noted plaintiff's moderate limitations dealing with supervisors, co-workers, and the general public, as well as in maintaining *concentration and attention*. [AR at 27.]

Plaintiff notes that Dr. Chehrazi and Dr. Klein "are the only two medical sources of record to have evaluated [plaintiff's] mental function." [JS at 8.] She states that because these opinions are not inconsistent with each other, Dr. Chehrazi's opinion may only be validly rejected for clear and convincing reasons.[6] [Id.] Plaintiff contends, however, that although the ALJ gave "significant" weight" to the opinions of both Dr. Chehrazi and Dr. Klein, the RFC "failed to incorporate many of the mental limitations that each of those doctors found." [Id.] For instance, although the ALJ accepted the doctors' conclusions regarding plaintiff's moderate difficulties with detailed tasks, in dealing with supervisors, co-workers, peers, and the general public, and with attention and concentration, the ALJ completely disregarded Dr. Chehrazi's findings that plaintiff is also moderately limited in her abilities to make simplistic work-related decisions without special supervision, comply with job rules regarding safety and attendance, and maintain persistence and pace in a normal workplace setting. [JS at 9 (citing AR at 99-100, 315-16).] She argues that the ALJ's "unreasoned disregard of those limitations amounts to harmful legal error as a matter of law." [Id.] Plaintiff also argues that "despite both doctors' use of the highly customary term

---

[6] Defendant does not contest this assertion. [See generally JS at 11-17; but see infra n.8.]

'moderately limited,' the ALJ elected to interpret the term in a disingenuous way that improperly minimizes" the degree of functional impact.[7] [Id.]

An "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). However, a limitation to simple, repetitive work by itself does not adequately encompass difficulties with concentration, persistence, or pace. Brink v. Comm'r Soc. Sec. Admin., 343 Fed. App'x 211, 212 (9th Cir. 2009), reaffirmed by Brink v. Comm'r of Soc. Sec. Admin., 2015 WL 1322670, at *1 (9th Cir. Mar. 25, 2015). In Brink, the ALJ's hypothetical to the VE included only a limitation to simple, repetitive work, and did not include the claimant's moderate limitations in concentration, persistence, or pace as assessed by the ALJ. Id. The Ninth Circuit found that the hypothetical question to the VE "should have included not only the limitation to 'simple, repetitive work,' but also Brink's moderate limitations in concentration, persistence, or pace." Id.; see also Betancourt v. Astrue, 2010 WL 4916604, at *3-4 (C.D. Cal. Nov. 27, 2010) (where the ALJ accepted medical evidence of plaintiff's limitations in maintaining concentration, persistence, or pace, a hypothetical question to the VE including plaintiff's restriction to "simple, repetitive work" but excluding plaintiff's difficulties with concentration, persistence, or pace resulted in a VE's conclusion that was "based on an incomplete hypothetical question and unsupported by substantial evidence."); see also Abrego v. Comm'r of the Social Sec. Admin., 2000 WL 682671, at *3 (D. Or. May 25, 2000) (remand was appropriate where "the hypothetical the ALJ posed to the VE failed to fully or accurately state plaintiff's deficiencies in concentration, persistence, or pace, as stated by the ALJ on the [form] attached to his decision."); Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996) (where plaintiff's frequent deficiencies in concentration, persistence, or pace "were not included in the hypothetical question, the [vocational] expert did not base his opinion on the full extent of [plaintiff's] limitations and his testimony could not have constituted substantial evidence to support the Commissioner's decision.").

---

[7] The Court generally agrees with this contention. [See Discussion infra, n.9.]

10

An ALJ is not required to discuss all the evidence presented, but must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)); see also Reddick, 157 F.3d at 722-23 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

Here, as discussed above, both Dr. Chehrazi and Dr. Klein found plaintiff moderately limited in her ability to understand, remember, and carry out detailed instructions. To slightly varying degrees, they also found limitations in plaintiff's ability to maintain attention and concentration, and in her ability to maintain persistence and pace.[8] In his first hypothetical to the VE, the ALJ

---

[8] For instance, Dr. Chehrazi found plaintiff's attention and concentration "mildly diminished" [AR at 314], and her ability to maintain persistence and pace to be moderately limited. [AR at 315-16.] Dr. Klein found plaintiff's attention and concentration to be moderately limited [AR at 99], and her ability to "perform at a consistent pace without an unreasonable number and length of rest periods" to be moderately limited, but also found that plaintiff is "able to sustain [concentration, persistence, or pace] for simple 1-2 step tasks." [AR at 100.] As previously noted [see supra note 6], the parties appear to
(continued...)

1 included "moderate limitations handling detailed or complex tasks, [and] moderate limitations
2 dealing with coworkers and supervisors and the general public." [AR at 70.] The ALJ defined
3 "moderate" for the VE as "more than mild, less than severe, but significant enough to be noticed,
4 but considered moderate on general observation as one understands the ordinary English usage
5 of the term moderate, but would not preclude the function indicated." [Id.] The ALJ modified his
6 second hypothetical to the VE to *preclude* detailed or complex tasks and, using the previously
7 defined term of "moderate," included a moderate limitation dealing with co-workers, supervisors,
8 and the general public, as well as a moderate limitation in maintaining attention and concentration.
9 [AR at 71.] Accordingly, the ALJ's second hypothetical to the VE, and the ALJ's RFC, both of
10 which restricted plaintiff from performing detailed or complex tasks or instructions, by implication
11 seem to have limited plaintiff to performing only simple tasks or instructions. The ALJ's second
12 hypothetical, however, although it captured the medical opinion evidence insofar as it established
13 a limitation precluding work involving detailed or complex tasks, and moderate limitations in
14 *concentration and attention*, failed to take into account plaintiff's moderate limitations in her ability
15 to make simplistic work-related decisions without special supervision, comply with job rules
16 regarding safety and attendance, and maintain *persistence and pace* in a normal workplace
17 setting, as assessed by Dr. Chehrazi and Dr. Klein.[9] See Brink, 343 Fed. App'x at 212 (noting that

---

19 (...continued)
20 agree that the opinions of Dr. Chehrazi and Dr. Klein do not contradict one another.

21 [9] Moreover, the Court notes that the ALJ's hypothetical limitations and his RFC, even with his "definition" of the term "moderate," provide very little guidance to the VE or otherwise in terms
22 of what plaintiff "*can still do* despite [her] physical, mental, nonexertional, and other limitations." See Cooper, 880 F.2d at 1155 n.5 (emphasis added). For example, the hypotheticals and RFC
23 give no clear indication as to the following, any of which might be impacted by plaintiff's "moderate" limitations as assessed by Dr. Chehrazi and Dr. Klein: (1) can plaintiff do simple tasks, simple
24 repetitive tasks, or simple tasks with only 1-2 step instructions; (2) can plaintiff perform tasks that are fast-paced or assembly-line type work; (3) should plaintiff have no contact, occasional contact,
25 or frequent contact with supervisors, co-workers, and/or the general public; (4) is plaintiff able to sustain concentration, attention, persistence, or pace for limited blocks of time, and if so, for how
26 long; (5) will plaintiff be off-task for any portion of the workday, or need more frequent breaks due
27 to her mental limitations; (6) can plaintiff work in an environment where there are occasional, frequent, or constant changes to the work setting; (7) can plaintiff work in a setting requiring
28 (continued...)

1  a limitation to simple, repetitive work by itself does not encompass difficulties with concentration,
2  persistence, or pace because even repetitive assembly-line work "might well require extensive
3  focus or speed").  Additionally, although he gave significant weight to the opinions of both Dr.
4  Chehrazi and Dr. Klein, the ALJ failed to explain why he included some of their assessed
5  limitations in his hypotheticals and/or in his RFC determination, while ignoring other significant and
6  probative findings.

7  Based on the foregoing, the ALJ failed to provide legally sufficient reasons for not including
8  a number of plaintiff's assessed mental limitations in his RFC determination.  Remand is warranted
9  on this issue.

**B.    PAST RELEVANT WORK IN EXCESS OF MENTAL LIMITATIONS**

Plaintiff argues that the ALJ's restriction from performing detailed or complex tasks conflicts with the requirements of her past work in balloon design. [JS at 18.]  She argues that the occupation of balloon designer, which requires Level 2 reasoning -- defined as the ability to apply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized instructions -- exceeds her mental functional limitations and, therefore, there is an unresolved conflict between the VE's testimony and the DOT. [Id. (citing DOT No. 651.685-014).]  Additionally, she argues that the ALJ neither "acknowledged the conflict between the VE's testimony and the DOT, nor did he attempt to resolve it." [Id.]

Because the ALJ's consideration of the first issue on remand may impact this second issue,

---

[9](...continued)
occasional, frequent, or constant work-related decision making; or (8) can plaintiff work around dangerous or hazardous machinery, or in a job in which the safety of others would be compromised, or which requires hyper-vigilance?  In short, there is no way to determine whether the ALJ and the VE were both considering the same limitations with regard to the use of the term "moderate."  For this reason, notwithstanding defendant's assertions to the contrary [see, e.g., JS at 16-17, 20, 22-23], the Court cannot find that the ALJ's error in explicitly accepting only some of plaintiff's assessed limitations and failing to include others without providing legally sufficient reasons, or the ALJ's failure to more specifically state plaintiff's residual functional capacity in terms of what she can do despite her limitations, was harmless.

the Court exercises its discretion not to resolve this contention of error.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1041 (9th Cir. 2007); <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See <u>Benecke</u>, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide legally sufficient reasons for failing to include all of the limitations in his RFC that were found by Dr. Chehrazi and Dr. Klein, and not rejected by the ALJ, the ALJ on remand shall reassess the opinions of these doctors. In reassessing the medical opinion evidence of these doctors, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including, if warranted, a legally sufficient explanation for crediting one doctor's opinion over the other. Second, the ALJ shall reassess plaintiff's RFC, and clarify for purposes of his hypotheticals to the VE and his RFC determination, what it is that plaintiff "*can still do* despite [her] physical, mental, nonexertional, and other limitations." Finally, the ALJ shall proceed through step four and, if warranted, step five to determine, with the assistance of a VE if necessary, whether plaintiff can perform her past relevant work or any other work existing in significant numbers in the national economy.

/

## VII.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 15, 2015

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

15